Gohegan v. Leach & Co.

## GOHEGAN v. LEACH & Co.

24 509
104 680

Conveyance: DURESS: HUSBAND AND WIFE. A person being charged with the larceny of goods from the store of his employers, a portion of which had been appropriated to the improvement of a homestead occupied by him and his family, his wife, under suggestions of sending her husband to the penitentiary, of being prosecuted herself for complicity with him, and also, that her homestead could be reached by judicial process, was prevailed upon to join her husband in the execution of a deed for such homestead, the title to which was in her, to such employers. *Held*, that the conveyance was obtained under such circumstances of oppression as precluded the idea of a free and voluntary act on the part of the wife; but as the evidence showed a willingness on her part to secure to the employers whatever was rightfully due them by reason of the wrongful appropriation of their property, by the husband, to the improvement of the premises, it was ordered, that the conveyance to them be confirmed upon their paying to the wife the value of the premises after deducting the amount thus due them; or, that, at the wife's election, the conveyance be set aside, upon her paying to them this latter amount together with such sums as they had paid on account of the premises since the conveyance to them.

*Appeal from Linn District Court.*

THURSDAY, MAY 14.

SUIT in equity to set aside a deed on the ground of duress, fraud and oppression.

The district court refused to set aside the deed, but by its judgment required the defendants to pay the further consideration of $300. Both parties appeal.

*I. M. Preston & Son* for the plaintiff.

*N. M. Hubbard* and *Wm. Thomson* for the defendants.

COLE, J. — The plaintiff is the wife of (though living separate and apart from, her husband) Edward Gohegan.

CONVEYANCE: duress: husband and wife.

Her husband was in the employ of the defendants for two or three years, as clerk in their store at Cedar Rapids. The defendants were engaged largely in merchandising and in the manufacture of flour, etc. The plaintiff brought with her to Cedar Rapids about three hundred dollars of money claimed by her in her own right; and shortly after arriving there, her husband received about two hundred dollars in his right. The plaintiff purchased in her own name, for the consideration of five hundred dollars, part of an out lot upon which was a cellar and frame for a house; a part of the consideration (perhaps one hundred dollars) was paid down, and the plaintiff gave her notes, and mortgage on the property to secure them, for the balance. During the time her husband was in the employ of the defendants the house was inclosed and partly finished, a stable was erected and a fence was built around the premises. While Edward Gohegan was in the employ of the defendants, he was paid, for a part of the time, thirty dollars per month; but for most of the time forty dollars, and during the last months fifty dollars per month. The plaintiff and her husband had three children, and they, together with plaintiff's mother, constituted the family.

Two or three months before the execution of the deed, sought by this proceeding to be set aside, the plaintiff and her husband separated; she charging him with improper intimacy with other women and the mal-appropriation of defendants' goods out of their store to the furtherance of his improper schemes and practices. After the separation, the plaintiff publicly charged that her husband had stolen goods from the defendants, not only for the use of his favorite women, but had stolen them and had them hid away in her house. Her conversations led to the issuance of a search warrant; and under it, about one hundred and fifty dollars worth of goods were found in

the plaintiff's house, and in the rooms occupied by her husband. Edward Gohegan was put under informal arrest and conferences between him and the defendants continued till in the evening. Just before dark at night of the day on which the search warrant was executed, an attorney-at-law, then in the employ of defendants, but who had heretofore been the friend and adviser of plaintiff, called on the plaintiff at her house and stated to her, in substance, that the matter could be settled, her husband kept out of the penitentiary and her children from disgrace by her conveying her homestead to defendants, and requested her to come to his office in a few minutes. She went accordingly, and remained there nearly four hours and until ten o'clock at night. As the result of the interview and under suggestions (to use the mildest term) of sending her husband to the penitentiary, prosecuting her individually and thereby disgracing her children, as well as that the defendants could get the property from her by judicial proceedings, she, together with her husband executed a conveyance of the property in controversy to the defendants, and her husband was released from custody and at once left the country. The evidence is quite voluminous and not free from conflict. Without reviewing it at length, in this opinion, which want of space in our Reports forbids, we must content ourselves with simply stating our conslusions.

The conveyance was obtained under such circumstances of oppression as preclude the idea of a free and voluntary act on the part of the plaintiff. And yet it is reasonably apparent from all the circumstances of the transaction that there was a willingness on the part of plaintiff to secure to defendants whatever was rightfully due them, by reason of the wrongful appropriation, by her husband, of the defendants property toward the erection of the house and improvements on the lot in controversy. The

defendants having obtained the title to the property under such circumstances may well be held to the performance of an implied promise to pay what the same was reasonably worth. The worth is shown to be two thousand dollars. The case presented demands the exercise of the peculiar plastic power of a court of equity in adapting and applying to the parties the exact measure of substantial justice which will effectuate the present rights of each party, and at the same time protect each from any future oppression on the one hand or denial of right on the other. It is to be regretted, however, that the defendants have not given us such certain and definite evidence of the amount due them by reason of the application of their property to the improvements upon the lot, as will enable us to fix very satisfactorily the sum to which they are entitled. It is clear that they ought not to have the benefit of the rise in value of the real estate. By giving to plaintiff only so much as she shows certainly to have put into the property, as did the District Court, would give to the defendants the profits arising from the increased value or market price of the real estate. The defendants should have just the amount of the value of their goods or money used in making the improvements upon the property. In our opinion, the amount shown, as near as can be determined, is six hundred dollars besides the amounts assumed to be paid by them at the time of the conveyance to them. The debts assumed by them were for the part of the purchase price of the lots still unpaid, for lumber, hardware and money furnished for blinds, amounting, with interest to about seven hundred dollars, and which we fix at that sum, be it more or less.

The judgment of the District Court will be reversed, and the cause remanded with directions to enter a judgment, that the title conveyed be confirmed in defendants, and that the plaintiff have a lien upon the property to

the extent of seven hundred dollars; and if the said sum, with interest thereon from date of judgment, is not paid to her by the defendants within ninety days therefrom, special execution will issue for the sale of the property for the payment thereof. Or, at the plaintiff's election, the conveyance of the property will be set aside and held for nought, and she may keep the same, with title thereto quieted, upon paying to defendants, in two equal payments within ninety and one hundred and eighty days from date of judgment the amount found due them as above, six hundred dollars, together with such sums as they may have paid on the debts assumed by them and matured, with interest thereon from date of judgment; and in default of payment of both said instalments a special execution will issue for the sale of the property for the payment thereof. In either case the sale will be subject to the prior liens upon the property for purchase-money, etc. On request of the parties or the plaintiff the judgment will be entered in this court. The defendants will pay the costs of this appeal.

Reversed.

WRIGHT, J. (dissenting.) — Seldom, if ever, have I felt such an abiding conviction of the incorrectness of any conclusion reached, as that announced in the foregoing opinion of the majority of the court. To my mind the case is wanting in every element of oppression, fraud, or any thing else to warrant the interference of a court of chancery. The substance of the whole matter is, that the husband taking advantage of his position, stole from defendant's store goods, according to his own voluntary admission, corroborated over and over again by his wife, almost if not quite sufficient to build or finish the house.

And this information plaintiff was the first to communicate to defendants. That she, herself, was guiltless in

respect to these larcenies I think is exceedingly questionable under all the testimony. However this may be, the husband was guilty — admitted it — she admitted it, and in the presence of those who had been their friends she voluntarily made this conveyance. If she did not act voluntarily, she never will and never did, nor will any *feme covert* in the future. Leaving out of view any thought, that there was an agreement to compromise a felony, which is given no weight in the majority opinion, and which I therefore need not discuss, I feel bound to say, that this deed was made freely, fairly, without oppression or the semblance of it, and without fraud, and that she is no more entitled to relief than if she had voluntarily paid for goods and money honestly, instead of feloniously obtained by the husband.

This much as to the question of fact and the main issue in the case. I cannot but say, however, that if I believed that plaintiff made this deed " under such circumstances of oppression as to preclude the idea of a free and voluntary act on her part," I should be very far from treating the conveyance as even a security for the payment of defendants' debt against the husband. The property belonged to the wife, in her own right. This is conceded. If the creditor can, by such " circumstances of oppression as preclude the idea of a free and voluntary act" on the part of the wife, obtain from her a deed to her homestead, and thereby obtain security for the husband's debts, then oppression secures a premium, the homestead exemption is a mere name, and the creditor, by his cruelty and fraud, though he does not get a valid conveyance, gets all he wants, security for his debt. Assuming that this was the husband's debt, as the majority opinion does, I repeat that if I believed that this deed was obtained under " circumstances of oppression," etc., I would never consent that it be held good for any thing,

Then, again, I see nothing in the case to warrant the thought that defendants "may well be held to the performance of an implied promise to pay what the property was reasonably worth." They either bought it, paying and accounting at the time fairly and freely for what was estimated as its true value, or else they in equity should be treated as holding it as security for the payment of their debt. To me it is a new doctrine that the mortgagee (treating defendants as such in equity) shall be compelled to pay the mortgagor what the property mortgaged is worth over and above the mortgage debt, before he can be entitled to his security. I supposed that the creditor should be first paid his debt, and that he could not be compelled, in order to secure it, to pay his debtor a sum which he never, either expressly or otherwise, assumed to pay.

So, too, I do not know how the conclusion was reached that the husband's liability to defendants was six hundred dollars. If I can believe human testimony, it was more than this. At all events, it would seem fair that defendants should have interest on the value of the goods stolen, from the time of the taking. This, even, is refused in the foregoing opinion.

For these reasons I cannot agree with the majority of the court.